IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

ANTHONY ACCURSO,                 §
#28981-044,                      §
      Petitioner,              §
                                §
v.                               §     No. 3:23-cv-02888-X (BT)
                                §
C. RIVERS,                       §
      Respondent.              §

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

     *Pro se* petitioner Anthony Accurso seeks federal habeas relief under 28 U.S.C. § 2241, challenging the results of a disciplinary proceeding where the Bureau of Prisons (BOP) found him in possession of a "hazardous tool." *See* ECF No. 3. (Petition)[1]. As explained below, the Court should **DENY** Accurso's petition and **DISMISS** this case **WITH PREJUDICE**.

## I.     BACKGROUND

     On March 2, 2023, correctional staff discovered an unauthorized, modified tablet computer inside Accurso's locker at FCI Seagoville, along with his prescription medications. *See* ECF No. 9 at 1-3 (Response in Opposition); *see also* ECF. No. 10 at 5-6 (Respondent's Appendix). The device was not BOP issued, "had been altered" and appeared "jail-broke" to enable wireless-network access. *See* ECF No. 10 at 5, 7, 11.

---

[1] Accurso also filed a reply, ECF No. 13, along with an evidentiary supplement, ECF No. 16, both of which the Court has considered.

Lieutenant P. Garza prepared an incident report documenting the discovery, which stated:

> Today, March 2, 2023, at approximately 12:30 p.m., I entered cell 04-428 and opened the locker belonging to Inmate Accurso, Anthony, Reg. No. 28981-044. I identified it as inmate Accurso's locker by medication bottles inside the locker. When I opened the locker, there was a tablet in a clear plastic bag with a gray cover sitting on the top right-side shelf. Upon inspection I realized it was not a BOP-issued tablet, had been altered, and had been 'jail broke.' It was a U-TAB7 from Union Supply. When I turned it on there was no inmate name and it did not require a PIN number to open it. Once I opened the tablet screen, it had 'Owner: Josue Salinas, Inmate ID: 50911177, OS Version: v3.10, and Mode: Non Restricted' on the top of the screen. Additionally, it had an Unictron AA107 Antenna which could be seen through the back cover. According to the Unictron website, this antenna is used for Bluetooth/WiFi/Zigbee applications and covers frequencies 2400-2500 MHz and 5150-5850 MHz. Zigbee applications are wireless networks used to send reliable data between nodes in a network. Due to the alterations of this tablet, it can compromise the safety, security, and orderly operations of the institution, while putting staff and inmates at risk of being harmed.

ECF No. 10 at 11 (Incident Report).

During Lieutenant Garza's investigation, Accurso stated that he had found the tablet on the recreation yard and brought it back to his room, asserting that it was a "state prison tablet" assigned to another inmate. *Id.* at 6,12. Lieutenant Garza determined that the tablet constituted a violation under BOP Code 108, which prohibits the "[p]ossession, manufacture, or introduction of a hazardous tool." *See* 28 C.F.R. § 541.3; *see also* ECF No. 10 at 12. Under this regulation, a hazardous tool includes "portable telephone[s], pager[s], or other electronic device[s]" that are "hazardous to institutional security or personal safety." 28 C.F.R. § 541.3. As a result, Accurso was formally charged and advised of his rights. ECF No. 10 at 5-6.

Prison officials determined the incident report supported the charge and referred the matter to the Unit Discipline Committee (UDC) for further review. *Id.* at 6. The UDC held a hearing on March 5, 2023, at which Accurso appeared and argued that the tablet was not "jail-broke" and was identical to those sold in the commissary. *Id.* Concluding that the issue warranted further proceedings, the UDC advanced the case to a Disciplinary Hearing Officer (DHO) for a formal hearing and provided Accurso written notice of the charge, a statement of his rights, and the opportunity to request a staff representative and witnesses. Accurso requested representation and identified two inmate witnesses to testify on his behalf. *Id.*

The DHO conducted a hearing with Accurso on March 16, 2023. *See* ECF No. 10 at 6-8. At the outset, Accurso confirmed that his rights were reviewed with him and that he had received a copy of the incident report. *Id.* at 7. Counselor A. Perez served as Accurso's staff representative and confirmed that he had met with Accurso before the hearing. Accurso called two inmate witnesses, who testified that they were ordered to leave the cell during the search and did not personally observe the officer find the tablet. When questioned, Accurso asserted, "No, you can't buy the tablet at commissary. The tablet doesn't work. They sell tablets just like this one at commissary." *Id.*

After considering the incident report, the witness statements, Accurso's own statements, and the photographic evidence, the DHO found that Accurso committed the prohibited act of Possession of a Hazardous Tool (a tablet) in violation of Code 108. *See* ECF No. 10 at 24-26 (DHO Hearing Report). The DHO

3

then sanctioned Accurso including disallowance of 41 days of good-conduct time, forfeiture of 13 non-vested days, and 180 days loss of commissary, phone, and visitation privileges. *Id.* at 8, 26. Accurso was advised of his appeal rights and received the written report of the DHO findings on March 20, 2023. *Id.* at 9.

Before filing this § 2241 petition on December 12, 2023, Accurso fully exhausted administrative remedies through the BOP's Regional and Central Office appeals. In his petition, Accurso raises two grounds for relief: (1) that his due process rights were violated because the evidence failed to establish elements of the offense, and (2) that Code 108 is unconstitutionally vague, as he allegedly received "no fair warning" that possession of the tablet was prohibited. *See* ECF No. 3 at 6. For the reasons discussed below, both grounds fail on the merits.

## II.    ANALYSIS

### A.    Due Process Standards

Under federal sentencing law, prison authorities may award credit to prisoners against their sentences as a reward for good behavior. 18 U.S.C. § 3624(b). A federal prisoner may challenge the loss of such "good-time" credits by filing a petition under 28 U.S.C. § 2241, which is the proper procedural vehicle for a prisoner challenging "the execution of [a] sentence rather than the validity of [the] conviction and sentence." *United States v. Cleto*, 956 F. 2d 83, 84 (5th Cir. 1992). If a petitioner demonstrates "that his due process rights were violated in the subject disciplinary proceedings, then § 2241 would be the appropriate remedy to use to restore his good

time credits." *See Brown v. Smith*, 828 F. 2d 1493, 1495 (10th Cir. 1987) (citing *Jackson v. Carlson*, 707 F.2d 943, 946 (7th Cir. 1983)).

A prisoner may not, however, be deprived of good time credits for a disciplinary violation unless he is afforded the minimal protections guaranteed by due process. *See Wolff v. McDonnell*, 418 U.S. 539, 570 (1974). Specifically, an inmate charged with a violation must be given (1) advanced written notice of the charges, (2) the opportunity to appear and call witnesses, (3) the opportunity, in certain situations, to receive the assistance of a fellow inmate or staff, and (4) a written statement by the fact finder as to the evidence relied on for the decision. *Id.* at 563-70.

Judicial review of a disciplinary decision is exceedingly limited. The Court's role is not to reweigh the evidence or reassess witness credibility, but only to determine whether "some evidence" supports the disciplinary officer's finding. *Superintendent, Massachusetts Correctional Institution v. Hill*, 472 U.S. 445, 454-56 (1983); *see also Smith v. Rabalais*, 659 F. 2d 539, 545 (5th Cir. 1981) (citation omitted) (court should consider whether the disciplinary decision is "supported by 'some facts' 'whether any evidence at all' supports the action taken by the prison officials."). So long as "any evidence at all" supports the DHO's conclusion, due process is satisfied, and federal intervention is appropriate only if the decision was "arbitrary or capricious." *See Reeves v. Pettox*, 19 F. 3d 1060, 1062 (5th Cir. 1994). Moreover, the evidence need not eliminate all other conclusions, nor does the "some evidence" standard require a weighing of the evidence or an independent assessment

of witness credibility. *Hill*, 472 U.S. at 455-56. An incident report alone can constitute some evidence. *See Johnson v. Hudson*, 242 F.3d 534, 536-37 (5th Cir. 2001).

### B.    Accurso was Provided Due Process

The record reflects Accurso received each of the procedural safeguards required. *See Wolff*, 418 U.S. at 563-70. First, Accurso received written notice of the charge of possessing a hazardous tool and a copy of the incident report more than 24 hours before the hearing. *See* ECF No. 10 at 5-7. He was also informed of his rights, including the opportunity to call witnesses and to have a staff representative. *Id.* He requested representation, met with Counselor Perez prior to the hearing, and was allowed to call two inmate witnesses, both of whom testified. *Id.* Finally, the DHO issued a written decision summarizing the evidence and explaining the sanctions imposed. *Id.* at 26. These procedural steps fully satisfied the requirements of *Wolff*.

Having received the due process protections required under *Wolff*, the Court considers whether the DHO's decision was supported by "some evidence" and finds that the record clearly meets that standard. Here, the reporting officer's statement explained that he located the tablet inside Accurso's locker, along with medication bottles bearing his name. *See id.* at 8. And Accurso did not meaningfully dispute this fact. Rather, Accurso attempted to deflect by testifying, first, that he found the tablet on the recreation yard and, later, that it was a "state prison tablet" assigned to another inmate. *Id.* The record further demonstrates how the altered tablet—a non-BOP-issued "U-TAB7" enabled for wireless access through a Unictron AA107

6

Antenna—constituted a "hazardous tool." *Id.* Given the tablet's unauthorized status, antenna configuration, and wireless-network capabilities, the DHO could rationally determine that the device fell within the "hazardous tool" category. Therefore, the DHO reasonably concluded that Accurso violated Code 108.

Accurso's related claim—that the evidence failed to establish the elements of the offense—likewise lacks merit. As discussed, Code 108 prohibits a prisoner from possessing any "other electronic device" not authorized by the BOP. *See* 28 C.F.R. § 541.3. The evidence here established: (1) Accurso's possession of an electronic device—the U-TAB7 tablet, and (2) the device was not issued by BOP directly to Accurso. *See* ECF No. 10 at 5-8. Accurso's assertion that the tablet was "substantially similar" does not alter this evidence. The prohibition applies to possession of unauthorized electronic devices, not merely to those differing in appearance from commissary items. Even if other tablets with similar appearance existed, this particular tablet was not authorized for Accurso's use.

The DHO reasonably credited Lieutenant Garza's incident report describing the tablet's modified nature over Accurso's version of events, and such credibility determinations do not violate due process. *See Hill*, 472 U.S. at 454-56. Because the DHO's decision was supported by "some evidence" and comported with due process, Accurso's claim under § 2241 fails. In sum, the disciplinary process and the DHO's reports and findings provided to Accurso the requisite measure of

process guaranteed to him under *Wolff* and *Hill*. None of his arguments undermine that conclusion. Accordingly, Ground One does not warrant relief.

### III.    VAGUENESS CHALLENGE

Accurso also contends that Code 108 is unconstitutionally vague as applied to him, asserting that his tablet did not have Wi-Fi or communication capability and therefore could not qualify as a "hazardous tool." ECF No. 3 at 6. He also argues that similar tablets were sold through the commissary, leaving him without notice that possession of this tablet would violate prison rules. *Id.* Accurso's claims lack merit.

### A.    Standards for Vagueness

A law or regulation is "void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). Vagueness does not arise merely because a regulation "could have been drafted with greater precision." *Rose v. Locke*, 423 U.S. 48, 49-50 (1975) (per curiam). This standard requires only that prison regulations provide "fair warning as to what is prohibited." *Grayned*, 408 U.S. at *114. A regulation fails to satisfy this requirement only if it is "so vague that men of common intelligence must necessarily guess at its meaning." *Connally v. Gen. Constr. Co.*, 269 U.S. 385, 391 (1926). The underlying principle reflects both "ordinary notions of fair play and the settled rules of law," ensuring that persons subject to a regulation have fair notice of the conduct that will render them liable to its penalties. *Id.*

Courts apply these principles with appropriate flexibility in the prison context, recognizing that institutional safety and discipline justify broader regulatory language. *See Wolff*, 418 U.S. at 555-56. Moreover, when the regulation "clearly applies to the challenger's conduct, he cannot challenge the regulation for facial vagueness." *Gibson v. Mayor & Council of City of Wilmington,* 355 F.3d 215, 225 (3d Cir. 2004) (citing *Parker v. Levy,* 417 U.S. 733, 755-56 (1974).

### B.    Code 108 Clearly Applies to Unauthorized Tablets

Code 108 easily satisfies these vagueness standards. The regulation explicitly defines hazardous tools to include "portable telephone[s], pager[s], or other electronic device[s]" that are "hazardous to institutional security." 28 C.F.R. § 541.3. This language provides inmates with clear notice that unauthorized electronic devices—regardless of their similarity to authorized items—are prohibited. The inclusion of examples (telephones, pagers) followed by the catch-all phrase "or other electronic device" demonstrates that the list is not exhaustive, and the rule's application is triggered by an item's potential hazard to security rather than its precise form or function. The regulation also authorizes sanctions for "aiding, attempting, abetting, or making plans" to commit a prohibited act, further underscoring its preventative and security-oriented scope. *Id.*

Courts, including the Fifth Circuit, have repeatedly upheld BOP Code 108 against vagueness challenges. *In Evans v. Martin*, the court held that classifying a cell phone as a "hazardous tool" neither violated the Administrative Procedures Act nor rendered Code 108 unconstitutionally vague. *See Id.*, 496 F. App'x 442,

444 (5th Cir. 2012); *see also Patel v. Zenk*, 447 F. App'x 337, 340 (3d Cir. 2011) ("We are not persuaded that Code 108 is unconstitutionally vague . . . [petitioner] does not dispute that he was prohibited from possessing a cell phone."). Other courts have reasoned that "[t]he fact that no list could give every example of a hazardous tool does not mean the concept is vague." *Martinez v. Underwood*, 2025 WL 2480899, at *2 (W.D. Pa. Aug. 28, 2025)

These authorities uniformly found that a person of ordinary intelligence would understand that possession of an unauthorized electronic device poses a security risk and therefore falls within Code 108's reach. *See United States v. Blake*, 288 F. App'x 791, 794 (3d Cir. 2008) ("An ordinary person would know that possessing a cell phone in prison threatens the order, discipline, or security of the institution."); *see also Brown v. Hogsten*, 2015 WL 7450072, at *4 (S.D.W. Va. Oct. 22, 2015), rec. adopted, 2015 WL 7455570 (S.D. W. Va. Nov. 23, 2015) ("BOP's inclusion of cell phones and related components as hazardous tools under Code 108 is simply an expanding interpretation of what constitutes a hazardous tool so that the BOP can effectively address the evolving ways inmate conduct and the introduction of contraband can threaten institutional safety and security.")(citation omitted).

This reasoning extends beyond cell phones. In *Evans v. Tamez*, 2012 WL 2160080 (S.D. Tex. Apr. 12, 2012), the court upheld a Code 108 violation for possession of an unauthorized MP3 player, finding such devices "could contain an audio recording of escape plans, or planned acts of violence, or other

communications which would clearly endanger the security, orderly running, and safety of the institution." *Id.* at *7. Although MP3 players are primarily entertainment devices and "are not categorically dangerous," the court recognized that such unauthorized devices "represents a real threat" to institutional security because they can "allow inmates to create new communications for illicit purposes." *Id.* at *7-8. Tablets with wireless capabilities present identical, if not greater, security concerns than MP3 players.

Accurso's claim that his tablet lacked Wi-Fi capability does not change this analysis. The regulation's text and consistent judicial interpretation focus on the potential hazard an unauthorized electronic device presents to institutional security—not on whether it was actively used or even fully functional. *See Id.* at 7-8 (finding Code 108 applicable to devices capable of storing pre-loaded data, even if not transmitting). Moreover, the determinative factor turns not only on the type of device, but more importantly, its authorization status. BOP-issued tablets sold through the commissary are controlled, monitored, and restricted in their functionality to ensure institutional security. By contrast, Accurso possessed an unauthorized "U-TAB7" device that had been "jail-broke" to enable wireless network access. *See* ECF No. 10 at 5-6, 11, 25. A tablet capable of storing information, running applications, or being modified to enable communication poses precisely the kind of risk Code 108 is designed to prevent. The regulation's concern lies in the threat such devices could create, not merely whether actual harm was done. Here, the BOP's interpretation of "hazardous tool" to include

11

Accurso's unauthorized tablet is neither arbitrary nor inconsistent with its regulations.

Furthermore, Accurso's own shifting explanations—first claiming he found the tablet on the recreation yard, then asserting it was a "state prison tablet" assigned to another inmate—demonstrate his awareness that the device was contraband. *See* ECF No. 10 at 5-7. His inconsistent statements undermine any suggestion that he lacked notice of the rule's application to his situation. Enforcing Code 108 against possession of an unauthorized, jail-broken tablet with potential wireless capabilities "corresponds to that regulation's purpose because unauthorized [tablets] can indeed be hazardous tools." *Evans*, 2012 WL 2160080 at *9. Accordingly, Ground Two does not warrant relief.

## IV.   RECOMMENDATION

For the foregoing reasons, the Court should **DENY** Accurso's § 2241 petition and **DISMISS** this case **WITH PREJUDICE**.

SO RECOMMENDED.

October 29, 2025.

REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## <u>NOTICE OF RIGHT TO APPEAL/OBJECT</u>

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

13